Good morning, Your Honors. I think that it's worth starting out with a clarification of the issue in this case. We are not asking the Court to resolve a factual dispute here. The Court and the parties are all working with a single set of facts, those that are contained in the enumerated paragraphs of the pre-sentence report. How do we know this? Because the judge told us. Prior to the sentencing hearing, the judge received a copy of the pre-sentence report, the addendum that included the parties' arguments of the issue and dispute, and the defense's sentencing memorandum. When we look at page 3 of that sentencing transcript, the Court made a very clear record as to what facts it was considering to determine the legal dispute that the parties presented. Specifically, the Court stated, the Court having no independent basis to disagree with or otherwise challenge any of the facts addressed in the numbered paragraphs of the revised pre-sentence report, I do herewith adopt all of those facts and will rely on them first in determining the advisory sentencing guidelines applicable to Mr. King's case. So here's the concern I have with that, and it is that in the revised pre-sentence report, there's all kinds of bold-faced warning, warning, David Gardner is not credible, and so much of this enhancement hangs on what he told the police. I agree. What we do have is the statements that David Gardner provided. What the evidence shows is whether or not it supports it. So the Court had both David Gardner's statements, the statements that he made that were contradicted, and the statements that he made that were not supported. I should also mention that the Court did address somewhat that issue in the record as well. The sentencing transcript also provides that on page 6 of the sentencing transcript, it made a reference as to what it was considering, and it was notable that the Court did not say that it was considering David Gardner's statement. Instead, the Court said that it was considering the excellent work of Mr. Featherston in preparing the pre-sentence report together with Mr. King's conduct and his own personal assessment in how it is and why it is that he found himself involved in these terribly destructive acts. So we can safely read Judge Stantmiller's remarks as saying, I'm taking David Gardner off the table. I'm relying on what the defendant himself said in that Facebook video once the police were swarming all over the Twin Cities looking for these people, and the other witness, the driver of his car who transported him to Kenosha for the protests that turned into riots. That's correct. And she said it was his idea. She didn't say anything more than that, right? Correct. The only thing that K.S. stated was that it was Mr. King's idea to travel to Kenosha. There wasn't any other information beyond that. What were they traveling to Kenosha for? To steal. Right. Yeah. But the point is that— It's his idea. He was the ringleader. Well, a ringleader is a person that is controlling the conduct of other people. That's pulling the strings. That's making decisions. That's making plans. That's saying what they're going to do. And that evidence isn't here. So there are five—when we eliminate all of the noise, there are really just five pieces of evidence that the government relied upon to prove or to try to meet its burden of showing this enhancement applied. We have Mr. King's Facebook post from the date of the offense where he says that he woke up on a money mission. No information about what that was, no invitation to that money mission, no invitation to Wisconsin, nothing that would entice someone to even ask questions or to join him. The second piece of evidence that the government relies on is a Facebook video that Mr. King posted on the day of the offense while he was in Kenosha. And that video depicts him encouraging conduct of others. And I think that encouraging is pretty generous, but I think that what's most important is what happens after he made these statements, which is that the people ignored him. Everybody just kept walking. The third piece of evidence that the government relies upon is that video that Mr. King posted a year after the offense where he very drunkenly claims that he was the ringleader. The other piece of evidence, as Judge Sykes has just indicated, is K.S.'s statement that it was his idea to travel to Wisconsin. And then finally, we have David Gardner's statements, which everybody agrees he lied to the police on several occasions and who said that Mr. King was a big fish. We can't leave out, I don't think, the driver that drove King to the riots who also said it was his idea to go. Yes, I think that there is – Mr. King has never denied that he wanted to go to Kenosha to steal. And that is what he did, and that's why he's in prison. And this appeal wouldn't undo that. He's going to be punished for that. But the evidence showed that even in procuring transportation, he wasn't involved. The driver, K.S., got a car on her own accord. She rented a car with her aunt without Mr. King's input, without Mr. King's money, without Mr. King's decision-making. So he had no say in that. He also had no say in who went and who didn't. The record that is before this court is not clear about that, but he didn't know all of the parties in here. I think that there were probably four people total that he knew of the 12 that were there. So he had no say as to who came and who went. He also had no say as to who drove or how they would get there. The evidence shows that he started out in this case as a passenger at the tail end of the car. And then that pattern continued. He just remained at the tail end of the group pretty much consistently. And the only time that he spoke up and said, hey, let's do this thing, people just ignored him and they just kept walking. So the evidence shows that he was generally just following the crowd, which is also consistent with his cognitive abilities. Well, I don't think we can draw that inference from the fact that the car he was riding in was third in the caravan from Minneapolis to Kenosha. What's really more important is what he did beforehand and what he did on the ground. Yes, Judge, I agree. And there isn't any evidence that either before the trip, during the trip to Kenosha, while in Kenosha, that he ever gave any direction, that he ever demanded any task to be completed or even delegated any task, that anybody ever listened to anything that he said. And so if we are looking at what he did, there isn't any leading in what he did while he was there. He stole. He helped Mr. Gardner in Mr. Gardner's second attempt to commit that arson. He stole cigarettes from a gas station. But he wasn't the initial actor in any of those instances. Did anyone have to share any of the profits? Was that? So that information was not part of the enumerated paragraphs. But if the court wants to know, there is no evidence about how the about how much money was obtained from the profits of those things, nor any information about how that decision was made. There's a suggestion that it was they ate what they killed. But there's more importantly, there's no evidence about what Mr. Gardner profited because Mr. Gardner stole drugs from the CBS and he sold those drugs on his own accord. And I imagine that selling controlled substances from CBS would probably get him more money than selling cigarettes stolen from a gas station. So I don't think that there is evidence that Mr. King got a larger share of the profits at all. Even if we were to consider facts outside. So I think that there have been other cases where. So I don't believe that this for the reasons that I stated that the. Statement that he posted is any evidence of recruiting. Your Honor, I actually I will reserve my minute that I have heard, but I apologize. Thank you. Thank you. Mr. Knight. May it please the court. My name is Kevin Knight and I represent the United States. Role enhancements are assessed using common sense to determine relative culpability here. Common sense dictated imposition of the role enhancement because Mr. King made a video where he acknowledged he was the ringleader of this conspiracy. And he threatened to kill anyone with the temerity to suggest that he was cooperating with law enforcement. That admission by itself is highly probative of the role he played in Kenosha. But not controlling but not controlling your honor. Exactly right. Critically, it's buttressed by objective electronic communications from Mr. King himself and two cooperator statements. One, I don't know that that's true, Your Honor. I think that Judge Stantmiller didn't accept David Garner's statements to the police. They were flagged as not credible in the pre-sentence report, the sections of the pre-sentence report that the judge accepted. I think it's the language. I think Miss Leha quoted accurately was from Judge Stantmiller as he imposed. Enhancement was that Judge Stantmiller felt the enhancement applied because of Mr. King's conduct and Mr. King's own personal assessment. And I think the question of whether Judge Stantmiller is crediting the gravamen of Mr. Garner's statement depends on what work we think the word conduct is doing there. What conduct is Judge Stantmiller referring to? I think it's fair to say given the emphasis that the parties placed on Mr. Garner's statement at the time, that Judge Stantmiller looking at the contradictory statements from Garner and the warts that accompanied it might be incorporating those things. Then we would have expected there to be some kind of a credibility finding and a statement from the judge about what part of David Garner's statement to the police, interview with the police, he was crediting as evidence of Mr. King's conduct. Because everything he said was contradicted by the video, which is the objective evidence. Respectfully, Your Honor, I don't know that it's everything. Well, most of it was. I mean, there were so many bold-faced sections in that pre-sentence report that it's clearly the pre-sentence writer saying this is not credible, this is not credible, this is not credible because the objective video evidence contradicts what the co-defendant is saying. Respectfully, Your Honor, I think that the bold is reflective of the changes from the revisions. If you go to the front page of the PSR, you see that the revision date is in bold, and I think it's that PSR writer's style to bold any changes that are recommended by the parties. But I take Your Honor's point. Okay. All right. Maybe I put too much emphasis on the bold face, but that's the pre-sentence writer resolving the dispute, the factual dispute between the parties about what Garner was saying, right? Because that addendum is full of disputed facts. I'm short of calling Garner to the stand during sentencing to resolve this himself. The judge had to accept or was accepting what was in the pre-sentence report, which is what this guy is saying is not borne out by the video evidence. Your Honor, I think it's more fair to say that the probation officer was flagging the issue. I think the probation officer still imposed the enhancement, and I think in the paragraph that's missing. Well, the probation officer doesn't do any imposition of an enhancement. That's the court's job. Of course, Your Honor. I meant to say, to respond to the court's— Recommended the enhancement. Yes, Your Honor. I think there's— And four levels, not just two. Yes, Your Honor. So the full boat. The full boat. And Mr. King deserved that squarely by our lights. What did he do other than to justify the application of four levels for being an organizer or leader— Your Honor, I'm glad you asked this. —to a mere manager or supervisor or no role in the offense enhancement at all, other than after the fact when he called himself the ringleader? Your Honor, I really appreciate that question because I think we need to clarify a point that seemed to get lost in the conversation with my friend, Ms. Leah. There is evidence that Mr. King, as the ringleader of this offense, profited disproportionately compared to the other co-conspirators. Well, there's evidence that he profited more than some of the others in this caravan. Yes, Your Honor. As the ringleader is the disputed point here. I think it's fair to say it's undisputed. Twelve people came to Kenosha to loot and burn down buildings. Of those twelve people that Mr. King organized, three— There's no evidence that he organized them. Oh, I don't know that that's true, Your Honor, and that's the other factual point that I want to make sure we didn't lose. We heard Ms. Leah discuss the Facebook post where Mr. King says he woke up on a money mission, but I heard my friend suggest that there was nothing about that Facebook post that suggests there's an invitation to go or an organizing element to that Facebook post, but that's not true. The PSR describes— What did the judge find, though? We've talked about the PSR, but can you tell us what the judge found? Yes, Your Honor. The judge found that Mr. King's own personal assessment, i.e., the Facebook video we've been discussing, and Mr. King's conduct. And as I say, I think we have to do some work in the record to determine what conduct Judge Stabler is referring to there. I think it's fair to say that one portion of that conduct that he's referring to is the Facebook— for the district court's credibility finding. Your Honor, I think that— Or factual finding, I'm sorry. I'm sorry, I didn't mean to interrupt. No, you're fine. I think that it's important to note that the defendant is not making a claim of insufficient explanation. The defendant is attempting to re-litigate the facts here. That is, you know, this defendant knows how to articulate an insufficient explanation claim. That is not in the reply brief. That's not in the opening brief. The defendant says that there was a procedural error insofar as the enhancement should not have been applied. But respectfully, I think that that determination was factual, and this court's review should be for clear error. To circle back to your question, Judge Sykes, about what other evidence— Before we do that, I think we're conflating two things here. So, in U.S. v. Robinson, we explain that even on clear error, there has to be enough for the court to be able to assess whether or not there was clear error. And Chief Sykes asked the question, what conduct were we referencing that the judge found? And so that's really where I'm trying to nail down, from the findings from the sentencing hearing, what was the conduct that the judge relied on? Yes, Your Honor. I think we can enumerate several facts here that not coincidentally track factors in the application. These include profits, and I know we've had some questions about that. But K.S.'s statement was not merely that this was Mr. King's idea. K.S. said that Mr. King, among the top quartile, three of the 12 who went, profited. And I'll give Your Honor, as a side, if you'll indulge me, that's the addendum to the P.S. report. That's 80-1 of the record. The judge did not adopt the addendum. The judge adopted what was in the revised pre-sentence report, and what's there about her statement is very brief. It just said it was his idea. I don't know that we should blinker ourselves to what was in the addendum. I think that the court, as it was – The addendum was just the party's dispute. I think it's – That's all that was in the addendum. It was your side of the story and your opponent's side of the story, and corralling the evidence on both sides. And unless the judge was going to go through and actually make some factual findings about the dispute, what we have to rely on was his adoption of what's in the revised pre-sentence, the four corners of that document. So take the addendum out of it. Okay. Your Honor, I'll focus just on the facts that are in the revised PSR's enumerated paragraphs. Fact one, doing a lot of work here for us, is Mr. King's statement that he's the ringleader. Fact two, the – I'm sorry, Your Honor. That's not controlling. We know that from the application note. I'm sorry.  I – that's not controlling, but it is instructive, right? We cited the authority in our brief, pages 20 to 21, I believe, that describe cases in which a title is an important contextualizing factor to other evidence. Here in the revised PSR, that other evidence includes Mr. King's Facebook post where he tagged two of his co-conspirators that morning to say they should go on the money mission. And then he engages with them in the post. That's in the PSR, Your Honors. Additional facts in the PSR include that track of factor. That's the degree of the participation here. That's an application note factor, note four, and it cuts in favor of imposition enhancement here. As the PSR describes, Mr. King fired a live weapon when he was looting the CITGO. Mr. King is the person who made those Facebook posts organizing this effort. And that objective evidence, separate from Mr. Garner, separate from KSSD and by the profits, is contextualized in, I think, an important way by that Ringleader video. I'm searching for something that supports what you just said about him organizing this. And organizing this to such a degree that he can be called the leader of this trip to Kenosha to participate in these riots. Your Honor, I see I'm out of time, but I'd like to answer your question if I could. Yeah, and if it's all hanging on that Facebook post where he said, I'm on a money mission and tagged two of his friends. I don't think it's just that, Your Honor. I think it's the Facebook post. I think that we can fairly say that it's some of Garner's statement. I don't think that the court should say that the district judge, in resolving to impose the enhancement, referring to Mr. King's conduct, was entirely blinkering itself to Mr. Garner's statement about what Mr. King did. Subject to Your Honor's question. I'm not sure what the basis for that argument is. If I may? Please. I think it's important to understand that when Judge Stadmiller said he was referring to Mr. King's conduct when he imposed the enhancement, much ink had been spilled in front of Judge Stadmiller about various of these issues to include, especially, Mr. Garner's statement. In context, I think one would expect that a resolution in favor of a government's position is reflective of an adoption of the Grobman of Mr. Garner's statement. I think in context that's fair. I agree with the court that perhaps some additional statement to that effect would have been helpful, but I think in context that's a fair inference to make. Subject to Your Honor's questions. Thank you. Thank you, Your Honor. Ms. Lea. I think that we should take Judge Stadmiller at his word, which is that he relied on the numbered paragraphs in the pre-sentence report and that he was relying on the conduct that was described of Mr. King, what he did. In addition, we don't have a factual dispute and we are not re-litigating the facts in this case. What we have here is a set of facts before this court, a clear set of facts, and this court has the question of whether those facts then support or show that Mr. King was a leader or an organizer such that he was subject to a four-level increase in the guidelines. And we know that this makes a difference because when the government attempted to ask the court to make a record that it would have imposed the same sentence, regardless of what the guidelines were, Judge Stadmiller said, I believe that the enhancement applies, but if it doesn't, we'll have to address it then. And the reason for that is because he sentenced Mr. King – I'm so sorry, is it okay if I finish? Yes, please. He sentenced Mr. King as if he were a leader, and if he wasn't a leader as defined by the enhancement and by the case law, then he shouldn't have been sentenced as such. The guideline difference is about a three-year difference. The government was contractually obligated to recommend the bottom of the guidelines, which here would have been 77, almost over a year than what the court actually imposed. And the court said it intended to give a below-guideline sentence. Thank you. Thank you. Our thanks to both counsel. The case is taken under advisement. And we'll move to our…